**IN THE CIRCUIT COURT OF MONTGOMERY COUNTY, MARYLAND**

| | |
|---|---|
| **CHARLES T. HOPKINS, JR.**<br>4817 Derussey Parkway<br>Chevy Chase, MD  20815<br><br>       **Plaintiff,**<br><br>       v.<br><br>**CAPITAL ONE, N.A.**<br>15000 Capital One Drive<br>Richmond, VA  23238<br><br>       **Defendant.** | )<br>)<br>)<br>)<br>)<br>)<br>)    Case No. _____<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

COMES NOW the Plaintiff CHARLES T. HOPKINS, JR., by and through counsel, and for his Complaint for damages and injunctive relief against the Defendant CAPITAL ONE, N.A., states as follows:

### THE PARTIES

1. Plaintiff Charles T. Hopkins, Jr. ("Hopkins"), an individual over the age of 18, resides at 4817 Derussey Parkway, Chevy Chase, Maryland 20827.

2. Defendant Capital One, N.A. ("Capital One"), is a financial institution, organized and formed under the laws of the State of Delaware. Its principal office is located at 15000 Capital One Drive, Richmond, Virginia 23238. Capital One offers banking products and financial services to consumers, small businesses and commercial clients throughout Connecticut, the District of Columbia, Louisiana, Maryland, New Jersey, New York, Texas and

Virginia. For all relevant time periods, Capital One has been transacting business in Montgomery County, Maryland.

## JURISDICTION AND VENUE

3. This Court has exclusive original jurisdiction over this action pursuant to Section 1-501, Courts and Judicial Proceedings, Annotated Code of Maryland (2006 Repl. Vol.), because damages claimed exceed $30,000, Section 4-401(1), Courts and Judicial Proceedings, Annotated Code of Maryland (2006 Repl. Vol.), and because this action is not otherwise one over which exclusive original jurisdiction is vested in the District Court under Section 4-402, Courts and Judicial Proceedings, Annotated Code of Maryland (2006 Repl. Vol.).

4. This Court has personal jurisdiction over Capital One pursuant to Sections 6-102 and 6-103, Courts and Judicial Proceedings, Annotated Code of Maryland (2006 Repl. Vol.).

5. Venue in this Court is properly laid in Montgomery County pursuant to Section 6-201(a), Courts and Judicial Proceedings, Annotated Code of Maryland (2006 Repl. Vol.). Capital One carries on regular business in Montgomery County, Maryland.

## FACTUAL BACKGROUND

### The Capital One Business Loan to CFS

6. On or about February 2007, Capital One extended a small business loan ("Business Loan") to Corporate Finance Services, LLC ("CFS"), a limited liability company formed and organized in the State of Maryland. Hopkins was a managing member of CFS.

7. The Business Loan was an installment loan for approximately $100,000, with monthly payments made over a seven (7) year term.

8. As a member of CFS, Hopkins assisted CFS in the Business Loan application process, but he did not sign personally for the CFS Business Loan from Capital One, nor did he

sign a personal guaranty agreement for the Business Loan. The Business Loan funds obtained from Capital One were deposited in the CFS account.

9. After April 2009, CFS did not make any further payments on the Business Loan account.

10. On or about October 1 2009, Capital One reported to various consumer credit reporting agencies, including Experian Information Solutions, Inc. ("Experian"), Equifax Information Services, LLC ("Equifax") and Trans Union, LLC ("Trans Union"), that Hopkins was personally responsible for $73,520, the outstanding balance of the Business Loan. Capital One reported that the "individual is personally liable" and that the Business Loan account was a "joint account" between CFS and Hopkins.

11. Capital One had no basis for making such a reporting on Hopkins's personal credit file, and knew that Hopkins was not personally liable on the Business Loan account and that the Business Loan account was not a "joint account" between CFS and Hopkins.

12. Capital One failed to notify Hopkins of the negative reporting to consumer credit reporting agencies.

13. On or about December 13, 2010, Capital One filed suit against CFS and Hopkins in the Circuit Court for Montgomery County, Maryland, Case No. 341711-V, for payment on the balance of the Business Loan. On July 22, 2011, the Court entered a Judgment by Consent against CFS in the amount of $73,556.29 – the remaining balance of the Business Loan, plus interest. In the same order, the Court entered a Stipulation of Dismissal with Prejudice as to Hopkins because he did not sign personally for CFS's Business Loan from Capital One and he did not sign a guaranty agreement. The Circuit Court dismissed Hopkins from any personal liability to Capital One on the Business Loan.

14. Following Hopkins's dismissal with prejudice from the lawsuit, Capital One made no attempt to correct its erroneous reporting to the credit reporting agencies, and continued to list the $73,520 debt on CFS's Business Loan as Hopkins's personal liability, despite Hopkins's dismissal from the lawsuit on the grounds that he was not personally liable for the Business Loan.

15. On May 3, 2012, Capital One conducted an examination of Hopkins in aid of enforcement of its judgment against CFS. Hopkins produced documents and answered questions under oath relating to the assets of CFS. During the examination, Capital One learned that CFS had no assets which could satisfy any portion of the judgment.

16. In July 2012, Hopkins checked his personal credit report and saw that Capital One had reported to consumer credit reporting agencies that Hopkins purportedly owed $73,520 to Capital One for the Business Loan taken out by CFS. 16. In July 2012, Hopkins disputed the reports with consumer credit reporting agencies Equifax and Experian, but was unsuccessful in getting the credit reporting agencies to remove the Business Loan debt amount from his personal credit report. Both Equifax and Experian indicated that the Business Loan debt amount could not be removed from Hopkins's personal credit report because Capital One refused to remove it.

17. On August 7, 2012, counsel for Hopkins asked counsel representing Capital One in the Business Loan lawsuit against CFS to have Capital One remove the $73,520 debt amount from Hopkins's personal credit report.

18. On or about August 15, 2012, Capital One requested that the consumer credit reporting agencies remove the reference to the $73,520 debt amount of the Business Loan from Hopkins's personal credit report. In response to Capital One's request, the $73,520 debt on Hopkins's personal credit report was removed.

**The Capital One Business Line of Credit to CFS**

19.     Apart from the Business Loan extended in February 2007, on or about March 2007, Capital One also extended a small business line of credit ("Business Line of Credit") to CFS.

20.     The Business Line of Credit was a revolving line of credit for $25,000, requiring CFS to make monthly payments to pay down the debt amount.

21.     As a member of CFS, Hopkins assisted CFS in establishing the Business Line of Credit with Capital One, but he did not sign personally for the Business Line of Credit, nor did he sign a personal guarantee agreement for the Business Line of Credit.  Hopkins also did not personally sign a Capital One Customer Agreement for the Business Line of Credit account, nor did he sign any other agreement making him personally liable for any debt incurred by CFS relating to the Business Line of Credit account. The Business Line of Credit funds obtained from Capital One were deposited into a CFS account.

22.     After May 2009, CFS did not make any further payments on the Business Line of Credit account.

23.     On May 3, 2012, Capital One conducted an examination of Hopkins in aid of enforcement of its $73,520 judgment against CFS.  During the examination, Capital One learned that CFS had no assets which could satisfy any portion of the judgment.

24.     Three years later after CFS had stopped making payments on the Business Line of Credit Account and only several days after learning that CFS had no assets and that the Consent Judgment would not be paid, in May 2012, Capital One reported for the first time to various consumer credit reporting agencies, including Experian, Equifax, and Trans Union, that Hopkins was personally responsible for the Business Line of Credit taken out by CFS in the amount of

$23,871. The report contained the following notation: "Account closed at credit grantor's request; business line – personally guaranteed." The report made by Capital One was false and misleading. The adverse credit report was a vindictive and malicious act, and pure retribution, by Capital One intended to punish and harm Hopkins personally due to CFS's inability to satisfy the Consent Judgment.

25. Capital One had no basis for making such a report in Hopkins's personal credit file, and knew that Hopkins was not personally liable on the Business Line of Credit account and that Hopkins had not "personally guaranteed" the Credit Line account for CFS.

26. Capital One failed to notify Hopkins of its negative reporting to consumer credit reporting agencies.

27. In July 2012, Hopkins discovered the Business Line of Credit debt amount of $23,871 first reported on his personal credit report in May 2012. After Hopkins complained about the debt, Experian, the consumer credit reporting agency, lowered the debt amount from $23,871 to $21,297. Instead of removing the debt reference that appeared in May 2012, Capital One caused the debt reference to be reported again in July 2012, but in a slightly lower amount.

28. Capital One failed to notify Hopkins of the negative reporting to consumer credit reporting agencies.

29. On July 30, 2012, Hopkins filed a complaint with the Consumer Financial Protection Bureau against Capital One for refusing to remove the negative credit information relating to the Line of Credit account from his personal credit report (Case No. 120730-000140). On July 31, 2012, Hopkins wrote to Experian, informing Experian of the Consumer Protection Financial Bureau complaint he had filed against Capital One for listing CFS's corporate debt amount for the Business Line of Credit on his personal credit report even though Hopkins had

not personally guaranteed the obligation, and Capital One could not provide any evidence that Hopkins had signed or otherwise agreed to be personally liable for CFS's Business Line of Credit account. Hopkins requested that Experian remove the negative report.

30.     On August 23, 2012, counsel for Hopkins sent a letter of complaint directly to Capital One requesting that the CFS Business Line of Credit debt amount be removed from Hopkins' credit report because Capital One had no basis for reporting that Hopkins was personally liable for a business debt that he neither incurred individually nor personally guaranteed.

31.     On September 14, 2012, Capital One responded to Hopkins, claiming that Hopkins "personally guaranteed" CFS's Line of Credit account. Despite numerous requests, Capital One provided no evidence, such as a credit application or other documentation signed by Hopkins to show that he personally guaranteed CFS's Business Line of Credit account. Capital One's letter also confirmed that the Business Line of Credit account balance was "charged off," which would not have occurred had Hopkins personally guaranteed the debt.

32.     In September 2012, Hopkins filed a complaint against Capital One with the Office of the Comptroller of the Currency (Case No. 02755763). The complaint reiterated Capital One's reporting of CFS's Business Line of Credit account debt on Hopkins's personal credit report, despite the lack of a personal guarantee from Hopkins. The complaint also requested Capital One to delete the negative report from Hopkins's credit file.

33.     On September 25, 2012, Capital One sent a letter response to Hopkins, attaching a sample copy of its Customer Agreement related to setting up a Capital One small business line of credit account. While the sample copy of the Capital One Customer Agreement requires a signature on the underlying account application or other evidence of indebtedness, Capital One

never provided any agreement or guarantee signed by Hopkins relating to the Business Line of Credit account because no such agreement or guarantee exists.

## Credit Reporting Regulations

34.     Maryland Code, Commercial Law, Section 12-503(e) provides that a "retail credit account agreement shall be in writing and either (i) signed by the buyer; or (ii) the seller or financial institution shall have made a reasonable attempt to obtain the signature of the buyer to the agreement."

35.     Despite Hopkins's numerous requests, Capital One has been unable to produce a written credit account agreement signed by Hopkins personally guaranteeing CFS's Business Line of Credit account. From October through December 2012, counsel for Hopkins repeatedly asked Capital One to provide any evidence it had to show that Hopkins had signed a written agreement personally guaranteeing CFS's debt obligation on the Business Line of Credit account. After five months of requests both from Hopkins and his counsel, Capital One has failed to provide any such written agreement signed by Hopkins. Moreover, Capital One has not shown any evidence that it made a reasonable attempt to obtain Hopkins's signature to Capital One's Customer Agreement that would make Hopkins personally liable for CFS's Line of Credit debt.

36.     Without Hopkins's signature on a written agreement guaranteeing CFS's debt obligation or making him personally liable for CFS's debt obligation, Capital One cannot collect from Hopkins the Business Line of Credit debt incurred by CFS

37.     Capital One cannot legitimately report CFS's Line of Credit debt on Hopkins's personal credit report.

38. The Fair Credit Reporting Act, 15 U.S.C. § 1681i (referred to as Section 611(a)(5)) requires Capital One to remove information from Hopkins's personal credit file that is inaccurate and unverifiable within thirty (30) days of Hopkins's complaint. Capital One's assertion that Hopkins is personally liable for CFS's Business Line of Credit debt is inaccurate and unverifiable.

39. Notwithstanding Hopkins's disputes, Capital One has failed to conduct timely and reasonable investigations of Hopkins's disputes after being contacted by Hopkins, consumer credit reporting agencies and attorneys for Hopkins, has willfully continued to report such inaccurate information to various consumer credit reporting agencies and has failed to mark the above account as disputed.

40. Capital One is continually violating the Fair Credit Reporting Act and is intentionally reporting false information to the consumer credit reporting agencies that Hopkins personally guaranteed CFS's Business Line of Credit debt or is otherwise personally liable for it.

41. As a result of Capital One's conduct, Hopkins has been damaged and is at risk of incurring additional damage.

42. The acts, errors and omissions of Capital One, as well as that of its agents, servants and/or employees, were done willfully, deliberately, wantonly, maliciously, with actual malice, evil or wrongful motive, with the intent to injure and with ill will or fraud.

**FIRST CAUSE OF ACTION**
**(Violations of Fair Credit Reporting Act)**
**Section 623(a)(1)(A)**

43. Hopkins incorporates by reference paragraphs 1 through 42 above.

44. At all times relevant hereto, Capital One was a "person" as that term is defined by 15 U.S.C. § 1681a(b).

45. At all times relevant hereto, Capital One was a "furnisher" as that term is used in 15 U.S.C. § 1681s-2(b).

46. Section 623(a)(1)(A) of the FCRA prohibits furnishers of information to consumer credit reporting agencies from furnishing any information relating to a consumer to any consumer credit reporting agency if the furnisher knows or has reasonable cause to believe that the information is inaccurate. 15 U.S.C. § 1681s-2(a)(1)(A).

47. As described above, in numerous instances, in connection with furnishing information relating to Hopkins to a consumer credit reporting agency, Capital One has furnished such information while knowing or having reasonable cause to believe that the information was inaccurate:

    a. Capital One knowingly and willfully furnished false information about Hopkins being personally liable for CFS's debt obligation for $73,520 under CFS's Business Loan account;

    b. Capital One knowingly and willfully furnished false information about Hopkins being personally liable for CFS's debt obligation for $23,871 under CFS's Business Line of Credit account;

    c. Capital One knowingly and willfully furnished false information about Hopkins being personally liable for CFS's debt obligation for $21,297 under CFS's Business Line of Credit account.

48. These acts and practices of Capital Once constitute violations of Section 623(a)(1)(A) of the FCRA, 15 U.S.C. § 1681s-2(a)(1)(A).

49. Capital One violated sections 1681n and 1681o of the FCRA by willfully and negligently failing to comply with the requirements imposed on furnishers of information pursuant to 15 U.S.C. § 1681s-2(b).

50. Capital One's conduct was a direct and proximate cause, as well as a substantial factor, in causing the serious injuries, damages and harm to Hopkins, and as a result, Capital One is liable to compensate Hopkins for the full amount of statutory, actual and punitive damages, along with attorneys' fees and costs, as well as such other relief, permitted by law.

**SECOND CAUSE OF ACTION**
**(Violations of Fair Credit Reporting Act)**
**Section 623(a)(7)**

51. Hopkins incorporates by reference paragraphs 1 through 50 above.

52. At all times relevant hereto, Capital One was a "financial institution" with "customers" as defined by Section 623(a)(7)(G)(ii) of the FCRA, 15 U.S.C. § 1681s-2(a)(7)(G)(ii).

53. At all times relevant hereto, Capital One furnished "negative information" about its customers regarding credit extended to customers to consumer reporting agencies as "negative information" is defined by Section 623(a)(7)(G)(i) of the FCRA, 15 U.S.C. § 1681s-2(a)(7)(G)(i).

54. Section 623(a)(7) of the FCRA requires that, if any financial institution that extends credit to customers and regularly and in the ordinary course of business furnishes information to a consumer reporting agency furnishes negative information about a customer to a consumer reporting agency, the financial institution shall provide the customer with a clear and conspicuous written notice about the furnishing of such negative information no later than thirty

(30) days after the financial institution furnishes the negative information to the consumer reporting agency. 15 U.S.C. § 1681s-2(a)(7).

55. As described above, in numerous instances, in connection with the furnishing of negative information relating to Hopkins to consumer credit reporting agencies, Capital One failed to provide Hopkins with the written notice required by Section 623(a)(7) no later than thirty (30) days after furnishing the negative information to the consumer credit reporting agencies.

56. These acts and practices of Capital One constitute violations of Section 623(a)(7) of the FCRA, 15 U.S.C. § 1681s-2(a)(7).

57. Capital One violated sections 1681n and 1681o of the FCRA by willfully and negligently failing to comply with the requirements imposed on financial institutions in connection with the furnishing of negative information pursuant to 15 U.S.C. § 1681s-2(a)(7).

58. Capital One's conduct was a direct and proximate cause, as well as a substantial factor, in causing the serious injuries, damages and harm to Hopkins, and as a result, Capital One is liable to compensate Hopkins for the full amount of statutory, actual and punitive damages, along with attorneys' fees and costs, as well as such other relief, permitted by law.

### THIRD CAUSE OF ACTION
### (Violations of Fair Credit Reporting Act)
### Section 623(b)(1)

59. Hopkins incorporates by reference paragraphs 1 through 58 above.

60. At all times relevant hereto, Capital One was a "person" as that term is defined by 15 U.S.C. § 1681a(b).

61. At all times relevant hereto, Capital One was a "furnisher" as that term is used in 15 U.S.C. § 1681s-2(b).

62. Section 623(b) of the FCRA requires furnishers of information to consumer credit reporting agencies to conduct a reasonable investigation when the furnisher receives a notice of dispute regarding the completeness or accuracy of the reported information from a consumer reporting agency in accordance with the provisions of Section 611(a)(2) of the FCRA, 15 U.S.C. § 1681i, and to report the results of the investigation to the consumer reporting agency. 15 U.S.C. § 1681s-2(b).

63. As described above, in numerous instances, in connection with Hopkins contacting both consumer credit reporting agencies and Capital One directly about the accuracy of his credit report, Capital One did not conduct a reasonable investigation or any investigation when it received notices of dispute from Hopkins or the consumer credit reporting agencies.

64. These acts and practices of Capital One constitute violations of Section 623(b) of the FCRA, 15 U.S.C. § 1681s-2(b).

65. Capital One violated sections 1681n and 1681o of the FCRA by willfully and negligently failing to comply with the requirements imposed on furnishers of information pursuant to 15 U.S.C. § 1681s-2(b).

66. Capital One's conduct was a direct and proximate cause, as well as a substantial factor, in causing the serious injuries, damages and harm to Hopkins, and as a result, Capital One is liable to compensate Hopkins for the full amount of statutory, actual and punitive damages, along with attorneys' fees and costs, as well as such other relief, permitted by law.

**FOURTH CAUSE OF ACTION**
**(Defamation)**

67. Hopkins incorporates by reference paragraphs 1 through 66 above.

68. Capital One has published statements through writing to various creditors, prospective credit grantors, other reporting agencies and other entities that the above-referenced derogatory inaccurate information is attributable to Hopkins and is accurate.

69. Capital One has published these statements each time a credit report on Hopkins has been requested from any creditor, prospective credit grantors or furnishers, or other source and by other means.

70. The statements made by Capital One are false.

71. Capital One has published these statements to at least every single creditor, furnisher or prospective creditor or other entity that has requested Hopkins's credit report.

72. Capital One knew that the statements were false when made and had no factual basis for making the statements.

73. Nonetheless, Capital One continues to publish the false and negative statements concerning Hopkins's credit history up through the present time.

74. Capital One's conduct was a direct and proximate cause, as well as a substantial factor, in causing the serious injuries, damages and harm to Hopkins and, as a result, Capital One is liable to compensate Hopkins for the full amount of actual damages, compensatory damages and punitive damages, as well as such other relief as may be permitted under the law.

### FIFTH CAUSE OF ACTION
**(Negligence)**

75. Hopkins incorporates by reference paragraphs 1 through 74 above.

76. Capital One's negligence consists of erroneously reporting and disseminating information that Hopkins was personally liable on a business account debt by various means and violating the Fair Credit Reporting Act as set forth above.

77. As a result of Capital One's above-mentioned conduct, Hopkins sustained and continues to sustain the losses and damages as set forth above.

78. Capital One's conduct was a direct and proximate cause, as well as a substantial factor, in causing the serious injuries, damages and harm to Hopkins and, as a result, Capital One is liable to compensate Hopkins for the full amount of actual and compensatory damages, as well as such other relief as may be permitted under the law.

## **PRAYER FOR RELIEF**

WHEREFORE, Charles T. Hopkins, Jr. seeks judgment in his favor and damages against Capital One, based on the following requested relief:

a. An order directing Capital One to remove the negative information concerning Hopkins's purported personal liability for CFS's Line of Credit account debt;

b. Actual damages;

c. Statutory damages;

d. Punitive damages;

e. Costs and reasonable attorneys' fees pursuant to 15 U.S.C. §§ 1681n and 1681o; and

f. Such other and further relief as may be necessary, just and proper.

## **JURY TRIAL DEMAND**

Hopkins demands a trial by jury on all issues so triable.

DATED:  December 14, 2012 Respectfully submitted,

*/s/ Daniel A. Ball*

_____

Daniel A. Ball
BALL LAW OFFICES, P.C.
5410 Edson Lane, Suite 315
Rockville, Maryland 20852
Tel: (301) 770-3050
Fax: (301) 770-3017
E-Mail: dball@dablaw.com

Gregg A. Hand
HAND LAW OFFICES LLC
5410 Edson Lane, Suite 315
Rockville, Maryland 20852
Tel: (301) 250-6590
Fax: (301) 476-2545
E-Mail: ghand@handlegal.com

Counsel for Plaintiff,
CHARLES T. HOPKINS, JR.